| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |

| | | |
|---|---|---|
| GIUSEPPE SCARVAGLIERI, Individually and On Behalf of All Others Similarly Situated | § § § § | |
| *Plaintiff(s)*, | § § | No. _____ |
| v. | § § | |
| SEADRILL AMERICAS, INC., | § § | |
| *Defendant(s)*. | § | |

## PLAINTIFF GIUSEPPE SCARVAGLIERI'S ORIGINAL COMPLAINT

Plaintiff Giuseppe Scarvaglieri (referred to as "Scarvaglieri") brings this action individually and on behalf of all similarly situated current and/or former employees of Defendant Seadrill Americas, Inc. (referred to as "Seadrill") under the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. §§ 2000ff-2000ff-11 ("GINA") and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA").

### I. Nature of Suit

1.     Scarvaglieri's claims arise under GINA and the ADA.

2.     GINA was enacted to (1) prevent the use of genetic information in employment decision-making; (2) restrict employers from acquiring their employees' genetic information; (3) prohibit employers from disclosing their employees' genetic

information and (4) prohibit employers from retaliating against employees based on GINA-protected activity. *See*, 42 U.S.C. §§ 2000ff-1(a)-(b), 2000ff-5(b), 2000ff-6(f); *see also*, 29 C.F.R. §§ 1635.1, 1635.4-1635.9.

3.     Seadrill violated GINA by (1) discriminating against its employees, including Scarvaglieri, based on genetic information; (2) requesting, requiring and/or purchasing its employees' genetic information, including Scarvaglieri's genetic information; (3) disclosing its employees' genetic information; and (4) retaliating against its employees, including Scarvaglieri, based on GINA-protected activity. *See*, 42 U.S.C. §§ 2000ff-1, 2000ff-5, 2000ff-6(f).

4.     The ADA was enacted to, among other things, "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[]" and to "address the major areas of discrimination faced day-to-day by people with disabilities[]" and to prohibit retaliation based on ADA-protected activity. 42 U.S.C. §§ 12101(b)(1), (4), 12203; *see also*, 29 C.F.R. §§ 1630.1(a), 1630.12.

5.     Seadrill violated the ADA by (1) requiring its employees, including Scarvaglieri, to submit to medical examinations and by making disability-related inquiries (for example, asking about an employees' genetic information, including Scarvaglieri's genetic information) that were neither job-related nor consistent with

business necessity and (2) retaliating against its employees, including Scarvaglieri, based on ADA-protected activity. *See*, 42 U.S.C. §§ 12112(a), (d)(4)(A), 12203.

6. Scarvaglieri (sometimes referred to as the "Class Representative") brings this action under 42 U.S.C. §§ 2000ff-6(a), 12117(a), 12203(c) and Fed. R. Civ. P. 23 individually and on behalf of all similarly situated current and/or former employees (defined below) to recover compensatory and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under GINA and the ADA. *See*, 42 U.S.C. §§ 2000ff-6(a), 12117(a), 12203(c); 29 C.F.R. § 1635.10(b).

## II. Jurisdiction & Venue

7. This action arises under federal statutes, GINA and the ADA. 28 U.S.C. § 1331 (federal-question jurisdiction).

8. Venue is proper in this district and division because Seadrill resides in this district and division. 28 U.S.C. § 1391(b)(1).

## III. Parties

9. Scarvaglieri is an individual who resides in Hillsborough County, New Hampshire and who was employed by Seadrill.

10. Seadrill is a Texas corporation that may be served with process by serving its registered agent:

CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201-3140

Alternatively, if the registered agent of Seadrill cannot with reasonable diligence be found at the company's registered office, Seadrill may be served with process by serving the Texas Secretary of State. *See*, Tex. Bus. Org. Code §§ 5.251-5.254; *see also*, Tex. Civ. Prac. & Rem. Code § 17.026.

11.    An allegation that Seadrill committed any act or omission should be construed to mean the company's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that, at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Seadrill or was done in the normal course and scope of employment of Seadrill's officers, directors, vice-principals, agents, servants or employees.

## IV.  Facts

12.    Seadrill is an oilfield services company that provides, among other things, offshore drilling services.

13.    Seadrill does business in the territorial jurisdiction of this Court.

14.    Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020.

15.     During Scarvaglieri's employment with Seadrill, the company had fifteen or more employees for each working day in each of twenty or more calendar weeks.

16.     Seadrill employed Scarvaglieri as a dynamic positioning operator.

17.     During Scarvaglieri's employment with Seadrill, the company requested, required, and/or inquired about its employees' genetic information, including Scarvaglieri's genetic information.

18.     Specifically, Seadrill's policy required all employees to submit to a Serum Indirect Antibody Detection SARS-CoV-2 IgG/IgM Rapid Test ("COVID-19 antibodies test")—which qualifies as genetic information under GINA and the ADA (specifically, with respect to disability-related inquiries)—before being permitted to work.

19.     Seadrill used that genetic information to make decisions about its employees' employment with the company, including Scarvaglieri's employment.

20.     Specifically, Seadrill would not permit its employees, including Scarvaglieri, to work offshore unless they (1) submitted to a COVID-19 antibodies test and (2) received a negative test result.

21.     Seadrill unlawfully disclosed its employees' genetic information, including Scarvaglieri's genetic information.

22.     Specifically, Seadrill disclosed the results of its employees' COVID-19 antibodies tests, including Scarvaglieri's COVID-19 antibodies tests, to other Seadrill employees and to employees of its customers.

23.     Seadrill retaliated against its employees, including Scarvaglieri, for engaging in GINA-protected activity.

24.     Specifically, Scarvaglieri and other Seadrill employees refused to take a COVID-19 antibodies test—which qualifies as genetic information under GINA—based on guidance from the Centers for Disease Control and Prevention ("CDC") and the Equal Employment Opportunity Commission ("EEOC").

25.     Because he did so, Seadrill terminated Scarvaglieri.

26.     Seadrill retaliated against its employees, including Scarvaglieri, for engaging in ADA-protected activity.

27.     Specifically, Scarvaglieri and other Seadrill employees refused to take a COVID-19 antibodies test—which qualifies as both a medical examination and as a disability-related inquiry under the ADA—based on guidance from the CDC and the EEOC.

28.     Because he did so, Seadrill terminated Scarvaglieri.

29.    Seadrill acted with malice or reckless indifference to its employees' federally protected rights, including Scarvaglieri's federally protected rights, under GINA and the ADA.

30.    Seadrill is liable to Scarvaglieri for his reasonable attorney's fees (including expert fees). *See*, 42 U.S.C. §§ 2000ff-6(a)(2), 1988(b)-(c), 12205; *see also*, 29 C.F.R. § 1635.10(b)(2).

31.    All current and/or former employees of Seadrill: (1) who were discriminated against based on genetic information; (2) who were requested or required to provide the company with genetic information (or whose genetic information was purchased by the company); (3) whose genetic information was disclosed by the company; (4) who were retaliated against by the company on the basis of GINA-protected activity; (5) who were requested or required to submit to medical exams or about whom the company made disability-related inquiries; and/or (6) who were retaliated against by the company on the basis of ADA-protected activity are similarly situated to Scarvaglieri.

### V.  Count One— Discrimination Based on Genetic Information in Violation of 42 U.S.C. § 2000ff-1(a)

32.    Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

33.    Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a senior dynamic positioning operator.

34.    During Scarvaglieri's employment with Seadrill, the company was covered by GINA.

35.    Under GINA, an employer commits an unlawful employment practice if it fails or refuses to hire or discharges "any employee, or otherwise … discriminate[s] against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee[] because of genetic information with respect to the employee[] or" if it limits, segregates or classifies its employees "in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee, because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a).

36.    By refusing to permit Scarvaglieri to work without a negative COVID-19 antibodies test, Seadrill discriminated against Scarvaglieri because of genetic information with respect to him.

37.    Seadrill acted with malice or reckless indifference with respect to the GINA violation(s) described above.

38.    As a result of the GINA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under GINA. *See*, 42 U.S.C. § 2000ff-6(a); 29 C.F.R. § 1635.10(b).

## VI.  Count Two—
## Unlawful Acquisition of Genetic Information
## in Violation of 42 U.S.C. § 2000ff-1(b)

39.    Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

40.    Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a dynamic positioning operator.

41.    During Scarvaglieri's employment with Seadrill, the company was covered by GINA.

42.    Under GINA, an employer commits an unlawful employment practice if it requests, requires or purchases genetic information with respect to an employee or a family member of the employee. 42 U.S.C. § 2000ff-1(b).

43.    By requesting and/or requiring Scarvaglieri to submit to a COVID-19 antibodies test as a condition of his employment with the company, Seadrill violated GINA's prohibition against the acquisition of genetic information.

44.    Seadrill acted with malice or reckless indifference with respect to the GINA violation(s) described above.

45.    As a result of the GINA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under GINA. *See*, 42 U.S.C. § 2000ff-6(a); 29 C.F.R. § 1635.10(b).

## VII. Count Three—
### Unlawful Disclosure of Genetic Information
### in Violation of 42 U.S.C. § 2000ff-5(b)

46.    Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

47.    Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a senior dynamic positioning operator.

48.    During Scarvaglieri's employment with Seadrill, the company was covered by GINA.

49.    Under GINA, it is unlawful for an employer to disclose genetic information concerning an employee. 42 U.S.C. § 2000ff-5(b).

50.     By disclosing the results of its employees' COVID-19 antibodies tests, including Scarvaglieri's COVID-19 antibodies tests, to other Seadrill employees and to employees of its customers, Seadrill violated GINA's prohibition against the disclosure of genetic information.

51.     Seadrill acted with malice or reckless indifference with respect to the GINA violation(s) described above.

52.     As a result of the GINA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under GINA. *See*, 42 U.S.C. § 2000ff-6(a); 29 C.F.R. § 1635.10(b).

### VIII.  Count Four—
### Retaliation Based on GINA-Protected Activity
### in Violation of 42 U.S.C. § 2000ff-6(f)

53.     Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

54.     Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a senior dynamic positioning operator.

55.     During Scarvaglieri's employment with Seadrill, the company was covered by GINA.

56.     Under GINA, an employer may not retaliate against an employee because the employee "has opposed any act or practice made unlawful by [GINA] or because such [employee] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [GINA]." 42 U.S.C. § 2000ff-6(f).

57.     By terminating Scarvaglieri for refusing to take a COVID-19 antibodies test, Seadrill retaliated against Scarvaglieri on the basis of GINA-protected activity.

58.     Seadrill acted with malice or reckless indifference with respect to the GINA violation(s) described above.

59.     As a result of the GINA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under GINA. *See*, 42 U.S.C. § 2000ff-6(a); 29 C.F.R. § 1635.10(b).

### IX.  Count Five—
### Unlawful Use of Medical Examinations and/or Disability-Related Inquiries
### in Violation of 42 U.S.C. § 12112(d)(4)(A)

60.    Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

61.    Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a senior dynamic positioning operator.

62.    During Scarvaglieri's employment with Seadrill, the company was covered by the ADA.

63.    Under ADA, an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability[.]" 42 U.S.C. § 12112(d)(4)(A).

64.    By requiring its employees, including Scarvaglieri to submit to a COVID-19 antibodies test, Seadrill violated the ADA's prohibition against medical examinations and disability-related inquiries.

65.    Seadrill acted with malice or reckless indifference with respect to the ADA violation(s) described above.

66.    As a result of the ADA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under ADA. *See*, 42 U.S.C. §§ 1981a(a)(2), 1981a(b), 2000e-5, 12117(a), 12205.

## X.  Count Six—
### Retaliation Based on ADA-Protected Activity
### in Violation of 42 U.S.C. § 12203

67.　　Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

68.　　Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a senior dynamic positioning operator.

69.　　During Scarvaglieri's employment with Seadrill, the company was covered by the ADA.

70.　　By terminating Scarvaglieri for refusing to take a COVID-19 antibodies test, Seadrill retaliated against Scarvaglieri on the basis of ADA-protected activity.

71.　　Seadrill acted with malice or reckless indifference with respect to the ADA violation(s) described above.

72.　　As a result of the ADA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the

past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under ADA. *See*, 42 U.S.C. §§ 1981a(a)(2), 1981a(b), 2000e-5, 12117(a), 12203, 12205.

## XI.  Count Seven—
### Class Action Allegations Under Fed. R. Civ. P. 23
### for Violations of GINA and the ADA

73.    Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

74.    Scarvaglieri, the Class Representative, brings Count One, Count Two, Count Three and Count Four against Seadrill under Fed. R. Civ. P. 23 on behalf of the following class of persons:

> All current and/or former employees of Seadrill (1) who were discriminated against based on genetic information by being denied permission to work without a negative COVID-19 antibodies test; (2) who were requested or required to provide the company with genetic information (or whose genetic information was purchased by the company), specifically a COVID-19 antibodies test; (3) whose genetic information was disclosed by the company, for example whose COVID-19 antibodies test results were disclosed to other Seadrill employees and/or to employees of its customers; and/or (4) who were retaliated against by the company on the basis of GINA-protected activity, for example by being denied work and/or terminated for refusing to take a COVID-19 antibodies test (referred to as the "GINA Class").

75.     Scarvaglieri, the Class Representative, brings Count Five and Count Six against Seadrill under Fed. R. Civ. P. 23 on behalf of the following class of persons:

> All current and/or former employees of Seadrill who were (1) requested or required to submit to medical exams (specifically, a COVID-19 antibodies test) or about whom the company made disability-related inquiries (specifically with respect to the presence or absence COVID-19 antibodies) and/or (2) who were retaliated against by the company on the basis of ADA-protected activity, for example by being denied work and/or terminated for refusing to take a COVID-19 antibodies test (referred to as the "ADA Class").

76.     The claims of the GINA Class and the ADA Class, if certified for class-wide treatment, will be pursued by all similarly situated persons who do not affirmatively opt-out of the class(es).

77.     The members of the GINA Class and the ADA Class are so numerous that joinder of all members is impracticable; the exact number of putative class members is unknown at the present time but should be over one hundred (100) for each class.

78.     There are numerous questions of law and fact common to the GINA Class and the ADA Class including:

> a.   whether the members of the GINA Class and the ADA Class were employees of Seadrill;
>
> b.   whether Seadrill violated GINA by (1) discriminating against the members of the GINA Class based on genetic information; (2) requesting, requiring and/or purchasing genetic information with respect to the members of the GINA Class or their family members;

(3) disclosing genetic information concerning the members of the GINA Class; and/or (4) retaliating against the members of the GINA Class on the basis of GINA-protected activity;

c.  whether Seadrill violated the ADA by (1) requesting or requiring the members of the ADA Class to submit to medical examinations and/or making disability-related inquiries about them that were neither job-related nor consistent with business necessity and/or (2) retaliating against the members of the ADA Class on the basis of ADA-protected activity;

d.  whether Seadrill is liable to the members of the GINA Class and the ADA Class for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under GINA and the ADA.

79.   Scarvaglieri's claims are typical of the claims of the GINA Class and the ADA Class because Scarvaglieri and the members of the GINA Class and the ADA Class all worked for Seadrill and were all victims of the same unlawful employment practices (described above); in other words, Scarvaglieri's claims and the claims of the GINA Class and the ADA Class arise out of a common course of conduct of Seadrill and are based on the same legal and remedial theories.

80.   Scarvaglieri will fairly and adequately protect the interests of the GINA Class and the ADA Class and has retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex employment litigation (including class actions, collective actions, and multidistrict litigation); Scarvaglieri and his counsel are committed to prosecuting this action vigorously on behalf of the GINA

Class and the ADA Class, have the financial resources to do so and do not have interests that are contrary to or that conflict with those of the proposed class(es).

81.    Class certification of the GINA Class and the ADA Class is appropriate under Fed. R. Civ. P. 23 because questions of law and fact common to the putative class members predominate over any questions affecting only individual members of the class; adjudication of these common issues in a single action has important and desirable advantages of judicial economy, and there are no unusual difficulties likely to be encountered in the management of this case as a class action.

82.    The class action mechanism is superior to any alternatives that may exist for the fair and efficient adjudication of these claims because:

    a.    proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort and judicial resources;

    b.    a class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate;

    c.    class treatment is the only realistic means by which the GINA Class and the ADA Class can effectively litigate against a large, well-represented corporate defendant like Seadrill;

    d.    in the absence of a class action, Seadrill would be unjustly enriched because the company would be able to retain the benefits and fruits of the numerous violations of GINA and the ADA; and

e. numerous individual actions would place an enormous burden on the courts as they will be forced to take duplicative evidence and decide the same issues relating to Seadrill's conduct over and over again.

83. Seadrill has acted or refused to act on grounds generally applicable to the GINA Class and the ADA Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to each class as a whole; prosecution of separate actions by members of the GINA Class and the ADA Class would create the risk of inconsistent or varying adjudications with respect to individual members of the GINA Class and the ADA Class that would establish incompatible standards of conduct for Seadrill.

84. Scarvaglieri will send notice to all members of the GINA Class and the ADA Class to the extent required by Fed. R. Civ. P. 23.

## XII. Count Eight—
### Attorney's Fees Under 42 U.S.C. §§ 2000ff-6(a)(2), 12205

85. Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

86. Scarvaglieri is authorized to recover attorney's fees (including expert fees) on his claims by statute. *See*, 42 U.S.C. §§ 2000ff-6(a)(2), 1988(b)-(c), 12205; *see also*, 29 C.F.R. § 1635.10(b)(2).

87. Scarvaglieri has retained the professional services of the undersigned attorneys.

88.     Scarvaglieri has complied with the conditions precedent to recovering attorney's fees.

89.     Scarvaglieri has incurred or may incur attorney's fees in bringing this lawsuit.

90.     The attorney's fees incurred or that may be incurred by Scarvaglieri were or are reasonable and necessary.

91.     Seadrill is liable to Scarvaglieri both individually and on behalf of the GINA Class and the ADA Class for attorney's fees (including expert fees) by reason of the GINA and ADA violations described above. *See*, 42 U.S.C. §§ 2000ff-6(a)(2), 1988(b)-(c), 12205; *see also*, 29 C.F.R. § 1635.10(b)(2).

## XIV.  Conditions Precedent

92.     All conditions precedent have been performed or have occurred. *See*, Fed. R. Civ. P. 9(c).

## XV.  Relief Sought

93.     Scarvaglieri demands the following relief:

    a.  an order allowing this action to proceed as a class action under Fed. R. Civ. P. 23;

    b.  an order appointing Scarvaglieri representative of the GINA Class and the ADA Class;

    c.  an order appointing MOORE & ASSOCIATES class counsel;

d. an incentive award for Scarvaglieri for serving as class representative if the Court allows this action to proceed as a class action under Fed. R. Civ. P. 23;

e. judgment against Seadrill in Scarvaglieri's favor both individually and on behalf of the GINA Class and the ADA Class for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay, attorney's fees (including expert fees), plus interest and costs; and

f. all other relief and sums that may be adjudged against Seadrill in Scarvaglieri's favor both individually and on behalf of the GINA Class and the ADA Class.


Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739


By: _Melissa Moore_____
Melissa Moore
Tex. Bar No. 24013189
S.D. Tex. Bar No. 25122
melissa@mooreandassociates.net
Curt Hesse
Tex. Bar. No. 24065414
S.D. Tex. Bar No. 968465
curt@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF**